UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
UNITED STATES OF AMERICA                    :
                                            :
                                            :        09 CR 625 (HB)
        - against -                         :
                                            :        OPINION &
                                            :        ORDER
LUIS HERNANDEZ, JACKSON RAFAEL              :
LOPEZ HERNANDEZ, et al.,                    :
                                            :
                        Defendants          :
----------------------------------------------------------------------x
Hon. Harold Baer, Jr., District Judge:

        Defendants Luis Hernandez ("Hernandez") and Jackson Rafael Lopez Hernandez

("Lopez") are two of eleven defendants charged in the instant four-count indictment with, inter

alia, conspiring to defraud the United States in connection with a scheme to file fraudulent tax

returns and to collect the associated tax refunds (the "2009 Indictment").  Hernandez and Lopez

were previously charged as the sole defendants in an allegedly unrelated two-count indictment

filed December 12, 2007 under case number 07 Cr. 1192 (AKH) (the "2007 Indictment").  The

2007 Indictment charges one conspiracy count and one substantive count of unlawful use of

fraudulent identification documents.  Hernandez and Lopez now move to dismiss the 2009

Indictment as against them on the grounds that it violates the Double Jeopardy Clause of the

United States Constitution.  For the reasons that follow, (i) Hernandez's motion is DENIED; and

(ii) Lopez's motion is GRANTED.

## I.        BACKGROUND

### A.  The 2007 Indictment and Related Proceedings

        The 2007 Indictment alleges that Hernandez and Lopez engaged in a fraudulent scheme

"to cash multiple United States Treasury checks, State of New York Department of Taxation and

Finance checks, and State of New Jersey Department of Treasury checks, which checks were

made payable to persons other than themselves, using false and fictitious identification

documents."  2007 Indictment at ¶1.  More specifically, the 2007 Indictment is in two counts:

Count One alleges conspiracy to violate 18 U.S.C. §1028(a)(3) and (f) which prohibits knowing

possession with the intent to use or transfer unlawfully five or more false or fraudulent

identification documents ("false IDs"); Count Two charges a substantive count of violation of 18

U.S.C. §1028(a)(2) and (3).[1]  The conspiracy count alleges a conspiracy between Lopez and Hernandez (but no one else) from at least September 2007 to October 19, 2007.  The indictment charges six overt acts that allegedly occurred during that period and that generally pertain to Hernandez and Lopez providing a confidential informant ("CI") with tax refund checks, false IDs, and, on two occasions "photocop[ies] of federal income tax return[s] purportedly filed in the name[s]" of either the payees listed on the checks or the persons depicted in the false IDs.  Id. at ¶8.  The indictment alleges that Hernandez agreed to provide the CI with the tax refund checks and false IDs with the understanding that he would use the false IDs to cash the checks and return a percentage of the proceeds to Hernandez.  Id. at ¶¶2-3.

The criminal complaint sworn to before Magistrate Judge Pitman by FBI Special Agent Seamus Clarke on October 17, 2007 (the "2007 Complaint"), provides a few additional details about the crimes charged.  For example, the 2007 Complaint avers that Hernandez told the CI that "he manufactured [the] checks, which [Hernandez] referred to as 'IRS checks,'" and that the faces of two of the checks referenced in the 2007 Indictment "indicated that [they] represented [] federal tax refund[s]." 2007 Complaint ¶¶ 4.c., 6.d., 8.b. The 2007 Complaint also confirms that federal agents did not know much about Hernandez and Lopez when the complaint was sworn: their last names are listed as unknown.  According to portions of the presentence report for Lopez cited in the Government's brief, there was information relating to the role of a person named "Melvin" in the 2007 conspiracy; Lopez's brother, Melvin Lopez is a named defendant in the 2009 Indictment.

---

[1] 18 U.S.C. §1028(a) provides, in pertinent part, as follows:
> (a) Whoever, in a circumstance described in subsection (c) of this section—
> . . .
> (2) knowingly transfers an identification document, authentication feature, or a false identification document knowing that such document or feature was stolen or produced without lawful authority;
> (3) knowingly possesses with intent to use unlawfully or transfer unlawfully five or more identification documents (other than those issued lawfully for the use of the possessor), authentication features, or false identification documents . . .

Section 1028(c) describes prerequisites for federal jurisdiction including, inter alia, that the false identification document "is or appears to be issued under the authority of the United States," or "the production, transfer, possession, or use prohibited by [Section 1028] is in or affects interstate or foreign commerce."  18 U.S.C. §1028(c)(1) and (3)(A).  Section 1028(f) provides for attempt and conspiracy liability as follows: "[a]ny person who attempts or conspires to commit any offense under [Section 1028] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."  18 U.S.C.A. § 1028 (f).

On the basis of the complaint, Lopez was arrested after meeting with the CI on October 19, 2007.  On December 18, 2007, a grand jury returned the 2007 Indictment.  On November 10, 2008, Lopez pled guilty to both charges in the 2007 Indictment.  At his plea Lopez allocuted to taking "IRS checks" given to him by his "boss" to a person to cash them. Tr. of Nov. 10, 2008 Hrg. ("Lopez Hrg. Tr.") at 11.   In response to questioning from Judge Hellerstein, Lopez stated that his "boss" obtained the checks through "an income tax office" but he did not know exactly what happened in the office. Id. at 12.  (Later in the allocution Lopez stated that his "boss" was named Junior Castillo. Id. at 16.)  Lopez stated that he began working at the tax office and "on the first day [his boss] had [him] organizing some papers, and then after that he was teaching [him] to do the taxes . . . the tax programs." Id. 12-14.  At the conclusion of the hearing, the Government represented that it would prove that "the defendant's conduct took place in or affecting interstate commerce, in particular the tax returns of the business were filed as a result through interstate commerce." Id. at 19-20.  On June 23, 2009 Lopez was sentenced by Judge Hellerstein on the charges in the 2007 Indictment to five years probation with a period of supervised release.

Hernandez was arrested on February 28, 2007.  On March 17, 2009, pursuant to a plea agreement, Hernandez pled guilty to Count Two of the 2007 Indictment, the substantive count, in exchange for dismissal of Count One, the conspiracy charge.  At Hernandez's plea hearing the Government represented that the intended monetary loss was between five and ten thousand dollars. Tr. of March 17, 2009 Hrg. at 9-10. Hernandez acknowledged that he used false IDs to look for a job and to cash checks from the IRS that "somebody made [] in the computer," i.e. forged IRS checks. Id. at 12-13.   Hernandez allocuted that he made approximately $20,000 in this way. Id. at 14.  At his allocution the Government again represented that "the defendant's possession of false identification documents was in or affecting interstate commerce[; i]n particular, among other things, the identities that were used to both file the fraudulent tax returns and that were on the false identification documents were identities of people whose—the identities had been stolen from people in Puerto Rico." Id. at 15.   In response to a question from Judge Hellerstein, Hernandez acknowledged that he had filed false income tax returns. Id. at 16.  On September 2, 2009, Hernandez was sentenced to 21 months' imprisonment and 3 years of supervised release and, in accordance with the plea agreement, Count One was dismissed on the Government's motion.

**B.  The 2009 Indictment and Related Proceedings**

On June 22, 2009, a grand jury returned the 2009 Indictment, which charges Hernandez, Lopez and nine other defendants with conspiring from at least 2006 until 2008 to use identification information of Puerto Rican citizens to file fraudulent state and federal tax returns that collectively sought more than $18 million in tax refunds.  More specifically, the 2009 Indictment charges each of the eleven named defendants with the following four crimes:

> (i)  Count One alleges conspiracy to defraud the United States with respect to claims in violation of 18 U.S.C. §286, specifically the filing fraudulent federal tax returns seeking tax refunds;

> (ii)  Count Two alleges conspiracy to commit mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 in connection with use of the mails and interstate wire communications to defraud the tax authorities of the State of New York and other states by filing fraudulent tax returns and collecting tax refund checks;

> (iii)  Count Three alleges a conspiracy to commit fraud in connection with identification documents in violation of 18 U.S.C. § 1028(f), specifically a conspiracy to violate 18 U.S.C. § 1028(a)(7) which makes it a crime to possess or use without lawful authority a false ID with the intent to commit or in connection with a violation of federal law or a state-law felony; and

> (iv)  Count Four alleges a substantive count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a), which provides for a consecutive two year sentence in connection with the use of false identification documents in connection with certain enumerated crimes including mail and wire fraud.

The 2009 Indictment describes some of the alleged roles of the co-conspirators in the fraudulent scheme (although it does not specifically charge such roles as overt acts).  For example, it alleges that Hernandez "provided Puerto Rican identities to be used in furtherance of the fraudulent scheme and arranged for the rental of apartments to which fraudulently obtained tax refund checks were sent." 2009 Indictment at ¶ 6.  Rafael Castillo a/k/a "Junior" is alleged to have "supervised the preparation of false and fraudulent federal and state tax returns," and Lopez and his brother Melvin are alleged to have prepared and filed false tax returns and created false IDs used in the fraudulent scheme.  Id. at ¶¶ 7-8.  None of the overt acts charged in the 2009 Indictment is attributed to Lopez and only one is attributed to Hernandez: the indictment alleges

that on July 16, 2006, Hernandez "rented an apartment in the Bronx in the name of a Puerto Rican identity that was not his."  See, e.g., id. at ¶22.a.

## II.      DISCUSSION

The Fifth Amendment provides that never "shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend. V. "[T]he Double Jeopardy Clause protects criminal defendants against [i] a second prosecution for the same offense after acquittal, [ii] a second prosecution for the same offense after conviction, and [iii] multiple punishments for the same offense." United States v. Dionisio, 503 F.3d 78, 79 (2d Cir. 2007) cert. denied, 129 S.Ct. 158 (2008) (citation and internal quotation marks omitted). "'[O]nce a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense.' " United States v. Estrada, 320 F.3d 173, 180 (2d Cir. 2003) (quoting Sattazahn v. Pennsylvania, 537 U.S. 101, 106 (2003)).  "'A double jeopardy claim cannot succeed unless the charged offenses are the same in fact and in law.'" United States v. Olmeda, 461 F.3d 271, 282 (2d Cir. 2006) (quoting Estrada, 320 F.3d at 180).  Therefore, to resolve the instant motions, I must first determine whether Hernandez and Lopez were in fact "placed in jeopardy" of conviction on the two counts charged in the 2007 Indictment.  I then must determine whether the crimes charged in the 2007 Indictment are the same "in fact and in law" as those charged in the 2009 Indictment.

### A. When Does Jeopardy Attach?

"It goes without saying that 'an accused must suffer jeopardy before he can suffer double jeopardy.'" Dionisio, 503 F.3d at 81 (quoting Serfass v. United States, 420 U.S. 377, 393 (1975)).  Jeopardy attaches "well before a verdict is reached."  Id.  In a jury trial, jeopardy attaches after the jury has been empanelled and sworn; in a bench trial it attaches when the court has begun to hear evidence.  Id.  Where charges are disposed of prior to trial, however, the Court must "look beyond formalistic labels of acquittal or conviction and scrutinize the substantive resolution underlying that disposition." Id. at 83.  The question is one of substance rather than of form and the inquiry must focus on "whether there has been a fact-based resolution of elements of the offense charged as a result of a process in which the defendant risked conviction." Id. at 85.

"Double jeopardy clearly 'prohibits a second prosecution for the same offense following a guilty plea.'" Olmeda, 461 F.3d at 279 (quoting Morris v. Reynolds, 264 F.3d 38, 49 (2d Cir. 2001)).  Here, Lopez pled guilty to both counts of the 2007 Indictment and Hernandez pled guilty to Count Two of that indictment.  Therefore, jeopardy has attached to those charges and a second prosecution for the "same offence[s]" is constitutionally barred.  See Morris, 264 F.3d at 49 ("Given that a guilty plea is a conviction and that the Double Jeopardy Clause protects against a second prosecution for the same offense after conviction the Clause prohibits a second prosecution for the same offense following a guilty plea.") (internal citations and quotation marks omitted).

However, under the holding of Dionisio, Hernandez was not placed in jeopardy of conviction for the conspiracy charged in the 2007 Indictment because Count One was dismissed on the Government's motion pursuant to the plea agreement.  In Dionisio, the Court of Appeals affirmed the district court's holding, under substantially identical circumstances, that jeopardy did not attach to the pretrial dismissal of a conspiracy charge with prejudice.  Id.  There, the record disclosed "only an agreement between the parties that following [the defendant's] plea of guilty to one [substantive] count . . . the government would move to dismiss the remaining counts with prejudice."  Id. at 89 (emphasis in original).  With "nothing in the record to suggest that the dismissal entailed a resolution of any factual elements that went to the merits of the charges . . . [and] certainly no indication that any such resolution (assuming arguendo that one had occurred) involved a process that put [the defendant] at risk of any conviction," the Circuit concluded that jeopardy had not attached to the counts dismissed on the Government's motion. Id. at 89.  The factual record of Hernandez's guilty plea is similar in all material respects.  First, the Court was not a party to the plea agreement made by and between Hernandez and the Government.[2]  Second, with one possible exception discussed below,[3] there is no indication in the record that the Court's dismissal of Count One entailed a resolution of any factual elements that went to the merits of the charges:  Judge Hellerstein merely granted the Government's motion to dismiss Count One pursuant to the plea agreement.  Because the proceedings before

---

[2] Indeed, pursuant to Fed. R. Crim. P. 11(c)(1), the Court is prohibited from participating **in** the type of plea negotiations that generally lead up to a plea agreement. See, Dionisio, 503 F.3d at 84 n. 5.

[3] In his plea allocution and in response to the questioning from the Court, Hernandez acknowledged that he had filed false income tax returns.  The implications of this admission are addressed infra.

Judge Hellerstein that led to dismissal of Count One of the 2007 Indictment against Hernandez are factually on all fours with Dionisio, Hernandez was not placed in jeopardy of conviction of the conspiracy charge of the 2007 Indictment.[4]

**B.      Double Jeopardy Analysis: Hernandez**

      1. Application of the *Blockburger* Analysis

Because Hernandez was not placed in jeopardy of conviction for the conspiracy charged in the 2007 Indictment, the question remaining as to Hernandez is whether the substantive charge to which he pled guilty—violation of 18 U.S.C. §1028(a)(2) and (3) for the unlawful use and unauthorized production of false IDs—is the same in fact and in law as the crimes charged in the 2009 Indictment.  The answer is that it is not.

      "In assessing whether a defendant is impermissibly charged with essentially the same offense more than once in violation of the Double Jeopardy Clause . . . it is not determinative whether the same conduct underlies the counts."  United States v. Chacko, 169 F.3d 140, 146 (2d Cir. 1999) (citing Hudson v. United States, 522 U.S. 93, 108 (1997) (Stevens, J., concurring in the judgment)).  Rather, the critical inquiry is "whether the 'offense'—in the legal sense, as defined by Congress—complained of in one count is the same as that charged in another." Id.[5] The applicable test is derived from the Supreme Court's 1932 decision in Blockburger v. United States, 284 U.S. 299 (1932).  The test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution."  United States v. Dixon, 509 U.S. 688, 696-697 (1993); see also Chacko, 169 F.3d at 146; Olmeda, 461 F.3d at 282; Dionisio, 503 F.3d at 82 n. 4; United States v. Ansaldi, 372 F.3d 118, 125 n.3 (2d Cir. 2004).  The test "emphasizes the elements of the two crimes" not the conduct that will be proved to sustain a conviction—so long as each offense "'requires proof of a fact that the other does not, the Blockburger test is satisfied,

_____

[4] I recognize that in Dionisio the Court of Appeals stated that "in many cases involving double jeopardy claims, it is desirable for a district court to decide the Blockburger question first, and thereby avoid what may be complex constitutional issues" relating to whether jeopardy has attached.  Dionisio, 503 F.3d at 82 n.4.  However, here the factual predicate of the double jeopardy analysis—i.e. which counts of the 2007 Indictment must be compared to the charges in the 2009 Indictment—depends on resolution of the "complex constitutional issue."

[5] In Dixon the Supreme Court overruled the "same conduct" test articulated by Grady v. Corbin, 495 U.S. 508 (1990).  See, e.g., United States v. Sessa, 125 F.3d 68, 72 (2d Cir. 1997) ("Dixon makes clear that although the Double Jeopardy Clause prohibits successive prosecutions for the same offense (as defined in Blockburger), it does not bar a second prosecution based on conduct proved at the first trial.")

notwithstanding a substantial overlap in the proof offered to establish the crimes. . . .'" <u>Brown</u> v. <u>Ohio</u>, 432 U.S. 161, 166 (1977) (quoting <u>Iannelli</u> v. <u>United States</u>, 420 U.S. 770, 785 n. 17 (1975)).  On the other hand, where the only difference between two charges is that one includes an additional element, the charge that lacks the extra element is a lesser included offense and the two are the "same offense" for double jeopardy purposes. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>White</u>, 240 F.3d 127, 132-33 (2d Cir. 2001).

Here, it is clear that the substantive false ID charge to which Hernandez pled guilty is not the "same offense" as the fraud conspiracies charged as Counts One and Two of the 2009 Indictment, even though there may be some overlap in the "proof offered to establish the crimes." <u>Brown</u>, 432 U.S. at 166.  To have sustained a conviction on the false ID charge, the Government would have had to prove that Hernandez transferred a false ID knowing it was stolen or produced unlawfully and that he possessed five or more false IDs with the intent to use or transfer them unlawfully.  18 U.S.C. §1028(a)(2) and (3).  In contrast, such proof would not be required to sustain a conviction of a conspiracy to defraud the United States (2009 Count One) or to use the mails or wires to defraud others (2009 Count Two).  18 U.S.C. §§ 286, 1341, 1349.  To convict Hernandez on those counts the prosecution must prove, <u>inter alia</u>, that Hernandez agreed with at least one other person to commit the underlying frauds.  Consequently, the crimes are not the "same offense" under the <u>Blockburger</u> test and Hernandez's guilty plea to Count Two of the 2007 Indictment does not impose a double jeopardy bar to his prosecution on Counts One and Two of the 2009 Indictment.  Had the Government not dismissed the conspiracy count of the 2007 Indictment, however, a different analysis would apply and the question would be much closer.

The same result obtains with respect to Count Three of the 2009 Indictment—the false ID conspiracy charge—although this charge bears a closer factual resemblance to the substantive charge of the 2007 Indictment to which Hernandez pled guilty.  Count Three of the 2009 Indictment alleges that Hernandez participated in a conspiracy to transfer, possess or use false IDs in connection with the fraud conspiracies charged in the first two counts of the indictment, in violation of 18 U.S.C. 1028(a)(7) and (f).[6]  The Supreme Court has made clear that "a

---

[6] Both Count One of the 2007 Indictment and Count Three of the 2009 Indictment are premised on Section 1028(f), which provides that "[a]ny person who attempts or conspires to commit any offense under [Section 1028] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."  18 U.S.C.A. § 1028(f).  However, the

substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes." United States v. Felix, 503 U.S. 378, 380-81 (1992); see also, Ansaldi, 372 F.3d at 124 ("A conspiracy is not the same crime as the underlying violation that it contemplates."). Therefore, notwithstanding certain factual similarities between the object of the conspiracy charged as Count Three of the 2009 Indictment and the count to which Hernandez pled guilty, the two are not the "same offense" for double jeopardy purposes. Felix, 503 U.S. at 391.

Finally, Hernandez's guilty plea does not bar subsequent prosecution under Count Four of the 2009 Indictment, which alleges aggravated identity theft in violation of 18 U.S.C. § 1028A. That statutory provision provides for an additional consecutive two-year sentence for use of a false ID in connection with certain enumerated felonies "in addition to the punishment provided for such felony." 18 U.S.C. § 1028A. The statute thus represents an instance where "Congress intended to authorize separate punishments for the offensive conduct under separate statutes," which is the fundamental inquiry at which the Blockburger test is aimed. Chacko, 169 F.3d at 146; see also, Garrett v. United States, 471 U.S. 773, 779 (1985) ("[T]he Blockburger rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history.") For the foregoing reasons, the crime for which Hernandez was placed in jeopardy of conviction—the substantive count of the 2007 Indictment—is not the "same offence" under the Blockburger test and Hernandez's motion to dismiss must be denied.

2. Other Considerations

The chronology of the two prosecutions and their procedural and substantive interweaving makes Hernandez's a harder motion to resolve, but ultimately does not compel a conclusion other than that dictated by application of the Blockburger test. The first somewhat troubling factual wrinkle is that at Hernandez's plea allocution the Government represented that it would prove a necessary element of the substantive charge of the 2007 Indictment—a connection to interstate commerce—by proving that the false IDs relied upon identities "stolen from people in Puerto Rico" and were used to file fraudulent tax returns. Consequently, it gives

---

object of the conspiracy and the substantive count charged in the 2007 Indictment was violation of Section 1028(a)(2) and (3), whereas the 2009 Indictment charges a conspiracy to violate Section 1028(a)(7). That provision makes it a crime to "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law." 18 U.S.C. §1028(a)(7).

me some pause that the Government's emphasis here—through the same AUSA—that the crimes charged in the 2007 Indictment had nothing to do with filing fraudulent tax returns. See Tr. of Sept. 2, 2009 Oral Arg. ("Arg. Tr.") at 33 ("[L]ooking at the 2007 Indictment . . . there is nothing that suggests that these particular defendants were involved, at all, in the filing of the tax returns that generated the checks that were obtained and cashed in connection with the 2007 indictment."); Gov't's Opp'n. at 15. Furthermore, at oral argument on the instant motions the Government contended that the use of "Puerto Rican social security numbers," which it dubbed "very essential" to the nature of the conduct in the 2009 Indictment is, as a concept, "completely foreign to the 2007 indictment." Id. Although the 2007 Indictment does not specifically allege that Hernandez and Lopez themselves filed fraudulent tax returns, it does allege that Hernandez showed the CI "a photocopy of a federal income tax return purportedly filed in the name of the payee listed" on one of the tax refund checks. This is in addition to the Government's representation at Hernandez's plea allocution that it intended to prove a connection to interstate commerce by showing the false IDs were used to file the fraudulent tax returns.   In light of how they intended to prove that necessary element of the offense, there is at least a dollop of chutzpa in the Government's contention that "there is not a single solitary thing in the 2007 indictment relating to the filing of tax returns." Id. at 34.

Ultimately, the question of whether the two charges are the same "in fact" is only relevant if they are also the same "in law" and the latter question must be answered by application of the Blockburger test. See, e.g., Felix, 503 U.S. at 386 ("Our precedents hold that a mere overlap in proof between two prosecutions does not establish a double jeopardy violation.") Hernandez contends that "more than a Blockburger analysis is required," and points the Court towards Ashe v. Swenson, 397 U.S. 436 (1970), and Harris v. Oklahoma, 433 U.S. 682 (1977). But in arguing that the Court must consider the conduct the Government will prove, Hernandez "effectively seeks to have his double jeopardy claim judged according to Grady's repudiated rule." Sessa, 125 F.3d at 72. This will not do. A closer and less-settled issue is the extent to which the Court may be required, in applying the Blockburger test, to look beyond the elements of the crime and "examine the allegations of the indictment rather than only the terms of the statutes."[7] United States v. Liller, 999 F.2d 61, 63 (2d Cir. 1993). Were I to do so, the

---

[7] In applying the Double Jeopardy Clause to "somewhat unusual facts"—a midtrial exclusion of evidence and a subsequent judgment of acquittal—the Supreme Court has stated "[t]he precise manner in which an

Government's representations about how it planned to prove its case would take on greater significance.  However, the Second Circuit "has never deployed such a test," and has in fact "retreated from the notion altogether."  United States v. Basciano, No. 05 Cr. 060 (NGG), 2008 WL 4596215, *7 (E.D.N.Y. Oct. 14, 2008) (citing Sessa, 125 F.3d at 72-73) (declining "to descend into the ether of [Liller's] fading Second Circuit dicta").  Nevertheless, even if I were to look beyond the statutory elements of the crimes to the manner in which they are intended to be proved, I cannot avoid the well-established rule that "a conspiracy to commit a crime is a separate offense from the crime itself" and the result that application of the rule compels here.  Felix, 503 U.S. at 391.

Next there is the question of Hernandez's admission at his plea allocution before Judge Hellerstein.  Because to the Court's knowledge, Hernandez has not attempted to withdraw his plea, the statement would not be rendered inadmissible in these proceedings by Fed. R. Evid. 410, which applies to "any statement made in the course of any proceeding under [Fed. R. Crim. P.] 11" regarding a "plea of guilty which was later withdrawn."  On the other hand, the collateral estoppel doctrine of Ashe v. Swenson that might apply to a conclusive factual finding in Hernandez's favor cannot be fairly used against Hernandez at a trial on the instant indictment.  See Simpson v. Florida, 403 U.S. 384, 386 (1971) (state court's reasoning that defendant would be collaterally estopped from disputing he was a participant in a robbery was "plainly untenable"); United States v. Pelullo, 14 F.3d 881, 896 (3d Cir. 1994) (holding that the "right to a jury trial necessitates that every jury empanelled for a prosecution considers evidence of guilt afresh and without the judicial direction attending collateral estoppel.")  Ultimately, though, the admissibility of Hernandez's statement at his plea allocution is not the issue before the Court and the statement itself does not alter the outcome of the double jeopardy analysis under Blockburger.

Finally, there is the procedural oddity created by the overlap in chronology of the proceedings under the two indictments.  Hernandez rightly points out that the Government could have—and, perhaps, more typically would have—filed a superseding indictment in the earlier case rather than letting Hernandez plead guilty to one of two counts charged therein.  But

---

indictment is drawn cannot be ignored, because an important function of the indictment is to ensure that, 'in case any other proceedings are taken against the defendant for a similar offence, . . . the record will show with accuracy to what extent he may plead a former acquittal or conviction.'"  Sanabria v. U. S., 437 U.S. 54, 65-66 (1978) (quoting Cochran v. U.S., 157 U.S. 286, 290 (1895)) (internal alterations omitted).

Hernandez points to no authority that suggests the Government was <u>required</u> to supersede instead of filing a new indictment in a separate case, and I find none.  Rather, in the somewhat analogous context of an indictment for a continuing criminal enterprise filed against a defendant who had already pled guilty to a substantive drug count in another case (analogous because the two are "separate offenses" in the same way that a substantive offense and a conspiracy charge are separate), the Supreme Court has held that the Government was under no obligation to try the charges in a single proceeding, particularly where the continuing criminal enterprise had not completed when the first indictment was returned.  <u>Garrett</u>, 471 U.S. at 792.  Although the Government's decision to allow Hernandez to plead guilty pursuant to the plea agreement and to re-indict him on new charges may be atypical, Hernandez fails to establish that it was illegal, abusive, or vindictive.  Hernandez took the Government's deal in March of this year, and after the 2009 Indictment was returned in June he was compelled to make the unusual argument to Judge Hellerstein that the conspiracy charge of the 2007 Indictment should <u>not</u> be promptly dismissed.  Judge Hellerstein did not accept the argument and no jeopardy attached to the earlier conspiracy charge.  As a consequence, and for the reasons set forth above, Hernandez's double jeopardy motion must be DENIED.

**B.  Double Jeopardy Analysis: Lopez**

1. <u>Comparison of Successive Conspiracy Prosecutions: the *Korfant* Factors</u>

Lopez pled guilty to both the substantive and conspiracy counts of the 2007 Indictment and thus jeopardy attached to each.  When comparing successive conspiracies for double jeopardy purposes the ultimate object of the inquiry is the same: "[a] double jeopardy claim cannot succeed unless the charged offenses are the same in fact and law."  <u>United States</u> v. <u>Estrada</u>, 320 F.3d 173, 180-181 (2d Cir. 2003).  The question is thus "'whether the second prosecution is for a conspiracy distinct from that previously prosecuted.'"  <u>Id</u>. (quoting <u>United States</u> v. <u>Gambino</u>, 968 F.2d 227, 231 (2d Cir. 1992)).  If the second prosecution is for a distinct conspiracy, there is no double jeopardy regardless of an overt act or other evidentiary overlap."  <u>Gambino</u>, 968 F.2d at 231.  As the Supreme Court stated in <u>Felix</u>, "the 'essence' of a conspiracy offense 'is the <u>agreement</u> or confederation to commit a crime."  503 U.S. 389-90 (citation omitted and emphasis added).  Consequently, "[a] single agreement to commit several crimes constitutes one conspiracy . . . [and] [b]y the same reasoning, multiple agreements to commit separate crimes constitute multiple conspiracies.  <u>United States</u> v. <u>Broce</u>, 488 U.S. 563, 570-71 (1989)

(citing <u>Braverman</u> v. <u>United States</u>, 317 U.S. 49, 53 (1942)).  The <u>Blockburger</u> "same elements" test, then, is ill-suited to the comparison of successive conspiracy prosecutions for double jeopardy purposes.

Instead, courts in this Circuit apply the so-called "<u>Korfant</u> factors" to determine whether the conspiracies are distinct. <u>Id.</u> (citing <u>United States</u> v. <u>Korfant</u>, 771 F.2d 660, 662 (2d Cir. 1985) (per curiam)).  Set out below are the factors, which are to be considered "with the lively awareness that no dominant factor or single touchstone determines whether" the compared conspiracies are in law and fact the same:

> (1) the criminal offenses charged in successive indictments; (2) the overlap of participants; (3) the overlap of time; (4) similarity of operation; (5) the existence of common overt acts; (6) the geographic scope of the alleged conspiracies or location where overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies.

<u>United States</u> v. <u>Macchia</u>, 35 F.3d 662, 668 (2d Cir.1994) (" <u>Macchia I</u>").  The <u>Korfant</u> test, then, integrates into a single "totality of the circumstances" analysis the two inquiries: <u>i.e.</u> whether the offenses are the same in fact and in law.  Concomitantly, and in further contrast to rigid application of the <u>Blockburger</u> test, the Court's inquiry is not limited to the four corners of the two indictments.  <u>See</u>, <u>e.g.</u>, <u>Estrada</u>, 320 F.3d at 178, 183 (relying upon facts elicited from testimony of cooperating witness in applying <u>Korfant</u> analysis); <u>Macchia I</u>, 35 F.3d at 669 (relying upon trial testimony in earlier conspiracy case).  The <u>Korfant</u> analysis is used to test whether two "successive conspiracy <u>prosecutions</u>," violate the Double Jeopardy Clause, not whether successive conspiracy <u>indictments</u> violate the Clause.[8]  <u>Estrada</u>, 320 F.3d at 180 (emphasis added).

The Second Circuit has "long recognized 'the ease with which prosecutors can draft indictments that allege what appear to be separate conspiracies but may actually be parts of an overall conspiracy.'"  <u>United States</u> v. <u>Lopez</u>, 356 F.3d 463, 467 (2d Cir. 2004) (quoting <u>United</u>

---

[8] In this respect, the analysis bears some similarity to that which applies to a determination of whether two charges are the "same in fact":

> a court must ascertain whether a reasonable person familiar with the totality of the facts and circumstances would construe the initial indictment, at the time jeopardy attached in the first case, to cover the offense that is charged in the subsequent prosecution. . . . That determination will require examination of the plain language of the indictments in the two prosecutions, as well as "the entire record of the proceedings."

 <u>United States</u> v. <u>Olmeda</u>, 461 F.3d 271, 282 (2d Cir. 2006) (quoting 1 Charles Alan Wright, FEDERAL PRACTICE AND PROCEDURE § 125 (3d ed.1999)).

States v. Abbamonte, 759 F.2d 1065, 1068 (2d Cir.1985)). "To guard against this danger," Second Circuit precedent establishes a shifting burden of proof: "if a defendant makes a non-frivolous showing that two indictments in fact charge only one conspiracy, the burden shifts to the prosecution to show, by a preponderance of the evidence, that there are in fact two distinct conspiracies and that the defendant is not being placed in jeopardy twice for the same crime." Id.

    2. Application

For the reasons that follow, under the Korfant factors, Lopez has clearly made a non-frivolous showing that the two indictments in fact charge only one conspiracy. Lopez, 356 F.3d at 467. Although it is a closer question, in light of the entire record of the proceedings under both indictments, the Government ultimately fails to meet its burden to show, by a preponderance of the evidence, that the earlier- and later-charged conspiracies are distinct.

Before applying the Korfant factors to the facts of this case, however, I pause for a moment to consider of what that factual record consists. The Second Circuit has said that the objective test used to determine whether two offenses are the same in fact must be applied "at the time jeopardy attached in the first case." Olmeda, 461 F.3d at 282. Here, jeopardy attached when Lopez pled guilty. And although "where a defendant pleads guilty to an initial indictment, it is not enough for him to assert that he subjectively believed that his allocution covered conduct charged in a subsequent prosecution, here I conclude that "such a conclusion would be reached by an objective arbiter." Id. For example, Lopez's allocution included the following colloquy:

| | |
|---|---|
| THE COURT: | Tell me what you did to plead guilty. |
| THE DEFENDANT: | Well, I took those checks to that person to cash them. |
| THE COURT: | Which checks? |
| THE DEFENDANT: | IRS checks. |
| THE COURT: | How did you get the IRS checks? |
| THE DEFENDANT: | My boss gave them to me. |

Lopez Hrg. Tr. at 11. When Lopez is first asked what conduct led to his arrest and prosecution he responded not with reference to the use of false IDs but to delivery of IRS checks on behalf of his "boss." Lopez goes on to state that he brought the IRS checks to the unidentified man because the man was going to cash them and Lopez was going to take the proceeds to his boss. Id. at 11-12. The allocution continued:

| | |
|---|---|
| THE COURT: | Do you know how the boss got the checks? |
| THE DEFENDANT: | Yes. |
| THE COURT: | How? |

| | |
|---|---|
| THE DEFENDANT: | He had an income tax office. |
| THE COURT: | He had an office. And what happened in the office? |
| THE DEFENDANT: | Well, I don't know. I just went there to work, and he was teaching me. |
| THE COURT: | What kind of work were you doing? |
| THE DEFENDANT: | On the first day he had be organizing some papers, and then after that he was teaching me to do the taxes. |

* * *

| | |
|---|---|
| THE COURT: | Were you going to get any money from the boss for doing this work, that is, taking the checks to a man and getting them cashed? |
| THE DEFENDANT: | No, he gave me $300 a week. |
| THE COURT: | As your salary? |
| THE DEFENDANT: | Yes. |
| THE COURT: | For all the work you were doing in the office? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Were you going to get any more money because you [took checks to be cashed] three or four times? |
| THE DEFENDANT: | No. |

Id. at 12-13.  Lopez thus allocuted to working in the tax office that he knew was the source of the IRS checks and although he was essentially a "runner," he was also being taught the "the tax programs." Id. at 14.  Furthermore, his set salary indicates that he was an employee carrying out the "boss's" orders and earning the same remuneration whether he was delivering checks, organizing papers or filing tax returns.  Upon questioning from the Government at the Court's direction, Lopez acknowledged that he had passed to the unidentified man identification documents that he knew were false.  The colloquy continued:

| | |
|---|---|
| MR. LEVY: | Who gave you the identification documents? |
| THE DEFENDANT: | Junior. Junior Castillo. |
| MR. LEVY: | He was the person who ran the tax office, correct? |
| THE DEFENDANT: | Yes. He was my boss. |

Id. at 16.  This portion of the allocution establishes that Junior Castillo—a co-defendant in the 2009 Indictment whose alleged role in the fraudulent scheme was to "supervise the preparation of false and fraudulent federal and state tax returns"—was the "boss" to whom Lopez reported.  But the Government's leading question also confirms that the prosecution knew that Junior Castillo "was the person who ran the tax office" at the time Lopez pled guilty.  Finally, at the conclusion of the hearing, counsel for the Government represented that the prosecution would prove "that the defendant's conduct took place in or affecting interstate commerce, in particular

the tax returns of the business were filed as a result through electronic communications that were interstate." Id. 19-20.  Although the 2009 Indictment does not specifically allege that Lopez filed any tax returns, such conduct is integral, rather than foreign, to the offense to which jeopardy attached in Lopez's case.

I now turn to the Korfant factors.  First, the conspiracies charged in Counts One and Two of the 2009 Indictment do not charge violation of the same statutory offense as that to which Lopez admitted he conspired conspiring to violate:  whereas Count One of the 2007 Indictment charges a conspiracy to use or transfer false IDs in violation of 18 U.S.C. §1028(f), the later indictment charges conspiracies to defraud the United States with respect to claims in violation of 18 U.S.C. §826 (2009 Count One) and mail and wire fraud in violation of 18 U.S.C. §1341 and 1349 (2009 Count Two).  Count Three of the 2009 Indictment alleges a false ID conspiracy under 18 U.S.C. §1028(f), although the alleged object is a distinct subsection of 18 U.S.C. §1028(a).   Though this first factor is certainly no help, the disparity in the crimes charged as the objects of the conspiracies does not in itself render a fatal blow to Lopez's double jeopardy motion because "[a] single agreement to commit several crimes constitutes one conspiracy." Broce, 488 U.S. at 570-71.  It is not coincidence that the overlap in "the criminal offenses charged in successive indictments" is but one of eight factors that the Circuit has cautioned must be considered "with the lively awareness that no dominant factor or single touchstone" is dispositive. Macchia I, 35 F.3d at 668.  It is not enough to argue that because the two indictments charge conspiracies to violate different statutes that they charge different conspiracies.  Only distinct agreements create distinct conspiracies. See Broce, 488 U.S. at 571.

Second, Hernandez and Lopez are alleged to be conspirators of one another in both indictments, a partial though far-from complete overlap in participants, given that the 2009 Indictment names at total of 11 co-conspirators.  But at the time jeopardy attached to the 2007 conspiracy, the Government clearly knew of Lopez's links to the key figures of the 2009 conspiracies.  One way we know this is that the 2009 Indictment alleges that Hernandez provided the Puerto Rican identities that were essential to the scheme and arranged for the rental of apartments.  Furthermore, Junior Castillo, the "boss" whose orders Lopez followed, is one of only two defendants in the 2009 Indictment alleged to have supervised other co-conspirators; he is specifically alleged to have "supervised the preparation of false and fraudulent tax returns." Finally, the 2009 Indictment charges Lopez and his brother Melvin with the same role in the

later-charged conspiracies—creating false IDs and filing false tax returns—and the Government acknowledges that there was information about a person named "Melvin" playing a substantially similar role in the conspiracy charged in the 2007 Indictment:  namely correcting a problem with the date of birth on one of the false IDs given to the CI.  In short, when one considers the persons with whom Lopez is alleged to have interacted in the later-charged conspiracies, the overlap with those co-conspirators with whom he interacted in the earlier-charged conspiracy is virtually complete.[9]

Third, the 2007 conspiracy is alleged to have occurred between September and October 2007, whereas the 2009 conspiracies are alleged to have run from at least 2006 until 2008.  Thus, with respect to the overlap of time, the earlier-charged conspiracy was "wholly within the time frame" of the later-charged conspiracy.  Calderone II, 982 F.2d at 47.

Fourth, with respect to the "similarity of operation," when the entire record of the proceedings under the 2007 Indictment is considered the two operations appear substantially similar if not identical.  For sure, the relatively bare-bones allegations of the 2007 Indictment do not suggest a sophisticated operation to procure false identities, file fraudulent tax returns, and collect the resultant refund checks.  But when jeopardy attached, the scheme to which Lopez pled guilty contained the essential elements of the conspiracies charged in the 2009 Indictment, even if some of the technical details were missing.  It is true that as alleged the 2007 conspiracy is closer to a "one-shot deal" than an "extensive and complex" criminal enterprise, see Estrada, 320 F.3d at 181, 183, but the ultimate object of the inquiry must not be forgotten.  When one considers the conduct to which Lopez pled guilty, the modus operandi of the criminal enterprise that Lopez agreed to join was substantially similar to that alleged in the 2009 Indictment.

Fifth, there are no common overt acts between the conspiracies in the respective indictments. Of course, this is not to say that simply because the overt acts alleged in the 2007 Indictment did not appear for an encore in the 2009 Indictment they were not cast and crew of the conspiracy charged therein.  See Mallah, 503 F.2d at 985 ("a test measuring only overt acts provides no protection against carving one larger conspiracy into smaller separate conspiracies.") Indeed, the type of overt acts charged in the 2007 Indictment are conspicuously absent in the

---

[9] It also merits note that there are no unnamed other co-conspirators in the 2007 Indictment and an agreement with a government agent does not count for conspiracy purposes.  So the only persons with whom Lopez could have agreed to participate in the 2007 conspiracy are those with whom he is affiliated in the 2009 conspiracy.

later pleading:  notwithstanding the extensive allegations about the operation to procure tax refund checks only a single sentence of the 2009 Indictment alleges that the members of the conspiracy sought to collect the proceeds of the their scheme, and this by obtaining tax-refund-anticipation loans from banks.  See 2009 Indictment at ¶11.f.  The overt acts charged in the 2007 Indictment—Lopez's delivery of tax refund checks to a man who said he could cash them—not only would have fit logically and appropriately into the operation alleged in 2009, but also are curiously missing from the later indictment.

Sixth, there is a substantial overlap in the geographic scope of the two sets of conspiracies, notwithstanding that, consistent with their larger membership the 2009 conspiracies are alleged to cover more ground.  Whereas the conduct that gave rise to the charges in the 2007 Indictment occurred only in Upper Manhattan, that upon which the 2009 Indictment is premised occurred in Upper Manhattan, the Bronx, and the Eastern District of Pennsylvania.  But the relevance of the geographical scope of allegedly distinct conspiracies must vary with the underlying criminal objectives.  For example, in Estrada, the first-charged conspiracy involved a single narcotics transaction in New York that was ultimately intended to supply the "street level, retail" operation in Connecticut charged in a later indictment—whereas the geographical scope of a "street level, retail" narcotics conspiracy is highly relevant, geography is clearly less significant to an alleged scheme involving false IDs and fraudulently obtained IRS checks.

Seventh, as with many of the Korfant factors, whether the two sets of conspiracies share a common objective depends on the level of generality at which the question is posed.  See Macchia I, 35 F.3d at 671.  In Estrada, the Circuit noted that the "final objective" of the earlier-charged conspiracy was "to secure a wholesale quantity of unprocessed cocaine," whereas the objective of the later-charged conspiracy was retail distribution of crack.  Estrada, 320 F.3d at 184.  Here, however, the "final objective" of the conspiracies charged in both indictments was converting tax refund checks into cash.  No doubt the allegations of the 2007 Indictment do not reach as far back into the initial stages of the scheme—they cover its very last step.  But it cannot be plausibly asserted that the "final objective" of the 2009 conspiracies was renting apartments under false identities or filing false tax returns.  At the end of the day the 2009 conspirators were after the same thing that Lopez acknowledged the 2007 conspiracy was all about: cashing IRS checks.  The 2009 Indictment charges the full picture of the operation but this does not mean that the conspiracy to which Lopez pled guilty was a distinct criminal confederation.

Eighth the "degree of interdependence" between the earlier- and later-charged conspiracies is essentially neutral.   "This factor requires us to consider the extent to which the success or failure of one conspiracy is independent of a corresponding success or failure by the other." Macchia I, 35 F.3d at 671.   The Government argues that the fact that tax returns were filed after both Hernandez and Lopez were arrested confirms that the success of one conspiracy did not depend on the success of the other.  The fact that certain conspirators were arrested before the entire plot toppled does not mean those arrested first were members of a distinct criminal compact.  While virtually self-explanatory, a good analogy is a narcotics conspiracy where a street-level lookout and a management-level lieutenant are each arrested but the drug sales do not abate; it is as equally plausible that the two were members of a single and much larger conspiracy that continued despite the arrests as it is that two distinct conspiracies were afoot.

In sum, Lopez has clearly made a non-frivolous showing that the conspiracies charged in the 2007 Indictment and those charged in the 2009 Indictment are one in the same, and the Government has failed to demonstrate that it is more likely than not that the contrary is true. The conspiracies had a common final objective and "although the [2009] conspiracy pursued this objective over a longer period of time and involved more participants, overt acts, [and] geographic areas . . . than the [2007 Indictment], the relationship of the two schemes appears to have been concentric rather than overlapping circles." United States v. Gaskin, 364 F.3d at 438, 454 (2d Cir. 2004).

The Government posits that the gross disparity in the intended losses alleged in the respective indictments demonstrates that the conspiracies they charge are distinct and that in being sentenced under the 2007 Indictment, Lopez was not punished for the crimes charged in the 2009 Indictment.  While true that the 2007 Indictment alleged attempts to cash some $8,000 in tax refund checks and the 2009 Indictment alleged attempts to procure and cash more than $18 million in fraudulent returns from federal and state taxing authorities, double jeopardy bars "a second prosecution for the same offense after conviction," Dionisio, 503 F.3d at 79, regardless of whether the punishment took into account the full severity of the offense.  Although the disparity in the scale of the operations charged in the respective indictments is one consideration that cuts in favor of distinct conspiracies, it is not dispositive.  The Government knew that Lopez was involved in filing tax returns when he pled guilty and if the Government wanted to ensure that

Lopez did not evade punishment for the higher levels of loss associated with the operation uncovered after the 2007 Indictment was returned, they should have done so before his guilty plea was accepted.

A final consideration is warranted to address Judge Newman's comment in Macchia I, that it is "likely that the prosecution can avoid a jeopardy defense in those situations where the facts concerning the greater conspiracy became known (and were not reasonably knowable) only after prosecution for the smaller conspiracy." 35 F.3d 662, 673 (2d Cir. 1994) (Newman, C.J. concurring); see also Macchia I, 35 F.3d at 669 ("Where the smaller conspiracy is charged first, there is not the same opportunity for prosecutorial abuse.")   Importantly, Judge Newman did not refer to situations where the greater conspiracy became known after indictment for the smaller conspiracy—he used the word prosecution.   No matter how ignorant the Government was about this fraudulent scheme in December 2007 when the first indictment was returned, they clearly knew much more about it in November 2008 when jeopardy attached and Lopez pled guilty, like the fact that Junior Castillo ran the income tax office and that the electronic filing of tax returns would provide the necessary connection to interstate commerce.  In the context of a double jeopardy claim for successive prosecutions of that "'elastic, sprawling and pervasive offense" of conspiracy, Boce, 488 U.S. at 583 (Blackmum, dissenting) (quoting Krulewitch v. United States, 336 U.S. 440, 445 (1949)), the Court's inquiry cannot be limited to the four corners of the initial indictment.  Where, as here, the complete record of the earlier prosecution reveals that a defendant was placed in jeopardy of conviction for the very same criminal agreement he is charged with in a later case, he has been made to run the gauntlet twice and the Double Jeopardy Clause requires that the later charges be dismissed.

Consequently, double jeopardy requires dismissal of each of the counts of the 2009 Indictment filed against Lopez.  This includes Count Four, which would subject Lopez to enhanced penalties for aggravated identity theft is predicated on the mail and wire fraud conspiracy charges that I have concluded charge the same conspiracy to which Hernandez already pled guilty.

### III.   CONCLUSION

For the foregoing reasons, Hernandez's motion to dismiss the 2009 Indictment on double jeopardy grounds is DENIED and Lopez's motion to dismiss the 2009 Indictment on the same

grounds is GRANTED.  The Clerk of Court is instructed to close this motion and remove it from my docket.

**SO ORDERED**
**October ⌡ , 2009**
**New York, New York**

U.S.D.J.