UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
UNITED STATES OF AMERICA,                :
                                         :
                         Plaintiff       :
                                         :        09 CR 625 (HB)
         - against -                     :
                                         :        OPINION &
                                         :        ORDER
LUIS HERNANDEZ, et al.,                  :
                                         :
                         Defendants      :
------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

  Defendant Luis Hernandez ("Defendant" or "Hernandez") moves to dismiss the indictment (the "2009 Indictment") in this action on the grounds of prosecutorial misconduct. Specifically, Hernandez alleges that the Government breached agreements by which the Government induced Hernandez (i) to cooperate with law enforcement and (ii) to plead guilty to one count of a previous indictment (the "2007 Indictment"). Essentially, Defendant claims that he was tricked into providing information and pleading guilty to a count in the 2007 Indictment with a false promise that he would receive favorable treatment from the Government and would not be prosecuted again for the "same" conduct. As such, Hernandez alleges the Government breached these agreements, and the present indictment should therefore be dismissed. The Government argues that this motion can be denied based on the fugitive disentitlement doctrine, for lack of a competent affidavit supporting Hernandez's factual assertions, and because there is no enforceable agreement that precludes the Government from bringing the charges in the present indictment. For the following reasons, Hernandez's motion is DENIED.

## I. BACKGROUND

  Hernandez was arrested on February 28, 2008 based on his alleged involvement in a criminal tax fraud conspiracy. Between August 2008 and January 2009, Hernandez attended, each time accompanied by his lawyer, four proffer sessions at the United States Attorney's Office for the Southern District of New York. Prior to the first of these proffer sessions, a translator explained to Hernandez the terms of the standard Proffer Agreement; he was also provided a written copy. It provides in pertinent part:

1

> (1) **THIS IS NOT A COOPERATION AGREEMENT**.
> . . . By receiving Client's proffer, the Government does not agree to make a motion on Client's behalf or to enter into a cooperation agreement, plea agreement, immunity, or non-prosecution agreement. The Government makes no representation about the likelihood that any such agreement will be reached in connection with this offer.
> . . .
> (7) . . . No understandings, promises agreements and/or conditions have been entered into with respect to the meeting other than those set forth in this Agreement and none will be entered into unless in writing and signed by all parties.
> . . .
> (9) Client and Attorney acknowledge that they have fully discussed and understand every paragraph and clause in this Agreement and the consequences thereof.

Gov't's Mem. of Law in Opp to Def.'s Pretrial Mots. to Supress, for Severance, and for Other Relief ("Gov't's Mem."), Ex. F at 1-2 (Luis Hernandez Proffer Agreement) ("Proffer Agreement" or "Agreement") (bold and all-caps formatting in original). Hernandez and his lawyer signed the Agreement. In addition, at each of the three subsequent proffer sessions, Hernandez and his lawyer reaffirmed their consent to the terms of this Proffer Agreement by marking their initials on the last page. Proffer Agreement at 2.

Notwithstanding the fact that he assented to the terms of this Proffer Agreement, including the integration clause, Hernandez, through counsel, avers[1] that in exchange for any valuable information provided by Hernandez at these proffer sessions that led to further arrests or charges, the Government promised Hernandez a letter pursuant to U.S.S.G. § 5K1.1 ("5K1.1 letter") or, "at the very least, lenience in the disposition of the charges." Aff. of John Nicholas Iannuzzi ("Iannuzzi Aff.") ¶ 5. Hernandez further alleges that the information he provided was valuable. The Government did not submit a 5K1.1 letter on Hernandez's behalf or "grant" Hernandez a cooperation agreement. Instead, Hernandez claims the Government offered a "middling reward plan" by offering to "dispose of the entirety" of the 2007 Indictment if Hernandez pled guilty to Count Two of that indictment. Aff. ¶ 24.

---

[1] The Government objects to the adequacy of the affidavit submitted by Hernandez's counsel. I need not decide this issue, however, since Defendant's motion is denied even with the affidavit taken into consideration.

2

The parties entered into a plea agreement on February 18, 2009 that resolved the allegations contained in the 2007 Indictment.  The agreement provides: "In consideration of the defendant's plea to [Count Two], the defendant will not be further prosecuted criminally by this Office … for the conduct charged in Count Two of the Indictment.  In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant." Hernandez Plea Agreement, at 1 (Feb. 18, 2009) ("Plea Agreement").  The Plea Agreement also provides an integration clause: "Apart from any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties." *Id.* at 7. Pursuant to this Plea Agreement, Hernandez entered a guilty plea on March 17, 2009, and, on September 18, 2009, upon the Government's motion, Count One was dismissed and Hernandez was sentenced to 21 months imprisonment on Count Two of the 2007 Indictment.

On June 22, 2009, a grand jury sitting in this District returned the present indictment, the 2009 Indictment, against Hernandez and others for a criminal tax fraud conspiracy.  This conspiracy is larger, involves more defendants, and allegedly occurred over a longer period of time, but grew out of some of the same factual allegations in Count One of the 2007 Indictment. Hernandez unsuccessfully moved to dismiss the 2009 Indictment on double jeopardy grounds. *See United States v. Hernandez*, No. 09 Cr. 625, 2009 WL 3169226 (S.D.N.Y. Oct. 1, 2009). Relevant to the fugitive disentitlement issue, on or about October 6, 2009, Hernandez completed his sentence for the 2007 Indictment, was released in error to the custody of immigration authorities, and deported to the Dominican Republic before he could face the charges raised in the 2009 Indictment.  He has not returned to the United States since being deported.  Hernandez now moves to dismiss the 2009 Indictment on the ground of prosecutorial misconduct for breach of the Government's agreements with Defendant.

## II.  DISCUSSION

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971); *see also United States v.*

3

*Vaval*, 404 F.3d 144, 154 (2d Cir. 2005).  Pre-trial agreements, including proffer agreements and plea agreements, are interpreted according to principles of contract law.  *See, e.g., United States v. Brumer*, 528 F.3d 157, 158 (2d Cir. 2008); *In re Altro*, 180 F.3d 372, 375 (2d Cir. 1999); *United States v. Liranzo*, 944 F.2d 73, 77 (2d Cir. 1991) (citations omitted).  Accordingly, in order to determine whether such an agreement has been breached, courts look to the parties' reasonable understanding of its terms.  *See Brumer*, 528 F.3d at 158 (2d Cir. 2008) (quoting *United States v. Riera*, 298 F.3d 128, 133 (2d Cir. 2002)).  Where the language of the agreement is unambiguous, "the parties' intent is discerned from the four corners of the contract." *United States v. Barrow*, 400 F.3d 109, 117-18 (2d Cir. 2005) (citations omitted); *Liranzo*, 944 F.2d at 77 (citations omitted).  However, pre-trial agreements "are unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain," and courts should "hold the Government to the most meticulous standards of both promise and performance." *Altro*, 180 F.3d at 376 (internal citations and quotations omitted).  Given these due process concerns, any ambiguities in the agreement are resolved against the Government. *Riera*, 298 F.3d at 133.  "When the Government breaches a plea agreement, the defendant is entitled to either withdraw his plea or have his agreement specifically performed." *Brumer*, 528 F.3d at 158.

Though Hernandez appears to allege that the Government is in breach of a single agreement, his papers suggest two distinct promises allegedly made by the Government, and two corresponding acts of performance by Hernandez in consideration.  First, Hernandez proffered valuable information in exchange for an alleged promise made by the Government that it would be lenient in some fashion with regard to the 2007 Indictment, whether by 5K1.1 letter or otherwise.  Defendant contends that the decision not to provide a 5K1.1 letter and to eventually indict him again in 2009 was a breach of this alleged promise.  The Government denies these claims, and points out that the Proffer Agreement that Defendant signed expressly states that the Government "does not agree" to make any particular motion, cooperation agreement, plea agreement, immunity agreement and "makes no representation" about the likelihood of any further agreement that may be reached as a result of the proffer sessions.  *See* Proffer Agreement, at 1.  Moreover, if any agreement did exist, Hernandez admits that the Government performed by offering a plea deal—in his words, "a middling reward plan."  Iannuzzi Aff. at ¶ 24.  By Hernandez's own admission, there has been no breach of an agreement for more lenient

4

treatment, if one even existed, because the offer of a plea deal constituted consideration for the proffered information.  While Defendant may have dreamed about a better deal, that was all it was, a dream, and he agreed to accept what the government offered.

Second, Hernandez claims that he was induced to enter a guilty plea based on the Government's promise to "dispose of the entirety" of the 2007 Indictment, and that the Plea Agreement was breached when he was again indicted in 2009.  Iannuzzi Aff. ¶ 24.  As a preliminary matter, the Government did "dispose of the entirety" of the 2007 Indictment in exchange for Hernandez's guilty plea to Count Two.  The executed Plea Agreement provided that in exchange for a guilty plea on Count Two, at the time of sentencing, the Government would move to dismiss any open counts, i.e. Count One, and at sentencing on September 18, 2009 the Government did just that.  Hernandez argues that because Count Two incorporates by reference other paragraphs of the 2007 indictment, the "conduct charged" in Count Two is actually broader than just the allegations specifically set forth in that count, and encompass the factual allegations in Count One as well. Defendant believes he cannot be prosecuted in the 2009 Indictment for a tax fraud conspiracy, because he pled guilty to Count Two of the 2007 Indictment, which he claims incorporated by reference the tax conspiracy allegations in Count One.  Hernandez claims he pled guilty, in essence, to the conduct alleged in both counts.  By bringing the present charges, Hernandez claims, the Government breached the Plea Agreement and the 2009 Indictment must therefore be dismissed against him.

Though any ambiguity in a plea agreement will be resolved against the Government, *Riera*, 298 F.3d at 133, this Plea Agreement is not ambiguous and its meaning can be plainly understood from its four corners.  It provides: "In consideration of the defendant's plea to [Count Two], the defendant will not be further prosecuted criminally by this Office … for the conduct charged in Count Two of the Indictment."  Plea Agreement at 1.  On the same page, perhaps for even more clarity, the Agreement describes the conduct for which Hernandez would not be prosecuted and reads: "Count Two of the Indictment charges the defendant with fraud in connection with identification documents . . . and arises out of his conduct on or about October 12, 2007."  *Id.*  The plain meaning is that the "conduct charged in Count Two" —and thus the conduct the Government is precluded from prosecuting in the future— is the "fraud in connection with identification documents" committed on October 12, 2007.

Defendant's effort to broaden the scope of the count to which he pled because it contained a boilerplate incorporation-by-reference to other allegations, in addition to specific factual allegations, is unavailing in this context.[2]  In this case, the parties' contract is unambiguous as to what the Government promised: in exchange for Hernandez's guilty plea, the Government agreed not to further charge his fraudulent conduct on October 12, 2007, and promised to dismiss Count One.  Hernandez does not allege that his conduct on October 12, 2007 is charged in the present indictment.  Further, Defendant's reading of the Plea Agreement is untenable.  If a guilty plea to Count Two also intended to include the factual allegations in Count One, then there was no reason for the Government to agree to dismiss Count One.  To construe the agreement as Hernandez argues would create a logical absurdity and render a part of the contract superfluous.  Further, any alleged implicit terms of the agreement were clearly excluded by the express integration clause, and "any such unilateral understanding [by Hernandez] would be insufficient to supplement the terms of the written plea agreement." *Altro*, 180 F.3d at 376.  The language of the Plea Agreement unambiguously required that Hernandez plead guilty to Count Two of the 2007 Indictment, in exchange for dismissal of Count One and no further criminal prosecution "for the conduct charged in Count Two," which the agreement expressly defines as the October 12, 2007 conduct.  There is no indication that the Government breached this agreement with the 2009 Indictment.

Finally, it is worth briefly noting that Defendant's motion could also be denied pursuant to the fugitive disentitlement doctrine.  The doctrine "provides that the fugitive from justice may not seek relief from the judicial system whose authority he or she evades." *In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 286 (S.D.N.Y. 2001) (internal quotation and citation omitted).  While traditionally applied at the appellate level, a trial court likewise has the discretion to use it. *Id.* (collecting cases).  Here, Defendant was not really a classic "fugitive," because it was the Government who improperly deported Hernandez before the present criminal action was concluded.  Nonetheless, how the person became a "fugitive" is not necessarily relevant because the focus is on the intent to return and appear before the court.  "A person who learns of charges

---

[2] Without the Plea Agreement's explicit description of the conduct charged in Count Two, defense counsel's argument might have some traction.  Under the federal rules, when a count contains an explicit cross-reference to allegations contained elsewhere in the indictment, those allegations are deemed to be set forth in the count containing the cross reference.  Fed. R. Crim. P. 7(c)(1).  However, this dispute turns on interpretation of the parties' contract, i.e. what conduct the Government promised not to further prosecute, not on the rules that govern interpretation of indictments generally.  The contract is unambiguous when it defines what Hernandez was accepting when he agreed to plead guilty to Count Two.

6

against him while he is outside the jurisdiction 'constructively flees' by deciding not to return." *Id.* at 287 (collecting case). A court must examine four grounds for disentitlement: "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape." *United States v. Awadalla*, 357 F.3d 243, 245 (2d Cir. 2004). Here, while Hernandez should not be punished for the Government's erroneous deportation decision, neither should he be rewarded for failing to return to the United States to face the present charges. Although I decide this motion on its merits, the Government raises a fairly compelling argument for fugitive disentitlement as well.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion is DENIED. The Clerk of the Court is instructed to close the relevant motion and remove it from my docket.

SO ORDERED
June 30, 2010
New York, New York

_____
Hon. Harold Baer, Jr.
U.S.D.J.